## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARVIN HENRY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-06-CV-309-XR** |
| | ) | |
| **ELAINE CHAO, Secretary of the U.S.** | ) | |
| **Department of Labor, et al.** | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER

On this day came on to be considered Petitioner Marvin Henry's ("Henry") Request for Exemption from 29 U.S.C. § 504.  Petitioner's request is DENIED for the reasons set forth below.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.     Prior to his employment with the United States Postal Service ("USPS"), Henry served in the United States Air Force from 1983 through 1994 and achieved the rank of Staff Sergeant.  Prior to his Honorable Discharge, he received an unacceptable performance rating and a notation that he demonstrated a lack of respect for authority and women in the Air Force.

2.      Henry began his employment with the USPS on or about January 6, 1996 as a mail handler.

3.     On or about April 1, 1996, Henry sexually assaulted a female co-worker[1] (and a

---

[1]The victim, DP, worked in the same facility as Petitioner, but in a different unit.  Petitioner had no supervisory authority over her.

fellow union member).  Henry testified that prior to April 1, 1996, he had a consensual, extramarital, sexual relationship with DP.  He testified that prior to April 1, 1996, DP clearly informed him that she "didn't want the act of penetration sex, she wanted foreplay . . . so I had non-penetration sex with her several times [for about three months]."  Henry testified that on April 1st, he was engaged in foreplay and vaginally penetrated the victim for 30-45 seconds when the victim began to cry and he stopped.  Henry further testified that the next day at work the victim asked him whether he would move in with her and leave his wife and he responded no, "because I didn't like her like that, I only wanted sex with her and that wasn't the basis of our relationship, it wasn't emotional attachment on my part."  Henry testified that the victim thereafter notified postal inspectors that he was harassing her in the workplace.[2]  A postal inspector investigation was inconclusive, Henry was allowed to return to work, and DP was moved to another work assignment.  DP subsequently brought a criminal complaint with the San Antonio Police Department regarding the April 1st incident.

4.      Petitioner, on July 29, 1997, plead *nolo contendere* to a bill of indictment which charged him with one count of sexual assault in the second degree in violation of Texas Penal Code § 22.011(A)(2) in *State of Texas v. Marvin Louis Henry*, No. 96-CR-4557 (226th District Court, Bexar County, Texas). According to the Indictment, Petitioner was charged with having engaged in an act of forcible sexual

---

[2]The victim's account was markedly different.  The victim's statement indicates that she repeatedly told Petitioner to stop and that he forced himself on her.

intercourse with the victim.

5.      On August 29, 1997, Henry was sentenced to 10 years of probation, and ordered to participate in a counseling program for sexual offenders (South Texas Offenders Program). He was also required to register in the state's sex offender program.

6.      Henry remained employed by the USPS during this period and was a member of the Postal Mail Handlers Union. Mail Handlers Local 311 is based in Dallas, Texas with branches located in cities throughout Texas. Local 311's San Antonio Branch has approximately 297 members, 32 of whom are female. Henry was appointed to be a union steward[3] in the San Antonio branch and served in that capacity from mid-1998 through 1999. He was then appointed chief steward and served in that capacity until April 2001. In April 2001, a vacancy occurred in the post of San Antonio Branch President[4] and Henry was appointed Branch President and was then later elected to the position by the Branch membership. He served as Branch President until September 2003, when he was required to resign his office.

7.      The Labor Management Reporting and Disclosure Act ("LMRDA") prohibits any individual convicted of rape in state court from serving as an officer, director,

---

[3]Stewards serve as a liaison between postal employees and management, file grievances on behalf of employee-members, advise employee-members of their employment rights, duties, and responsibilities, and assist management in problems relating to labor-relations matters. Original Petition, ¶ 6. The steward is the primary liaison between the union and the individual member. The union relies on the steward to communicate its messages to its members.

[4]A Branch President oversees stewards, handles grievances and administers the union collective bargaining agreement.

executive board member, or employee of a labor organization. 29 U.S.C. § 504(a).[5]
Violations of § 504 are punishable by a fine of up to $10,000 and a term of
imprisonment of up to five years. *Id.* at § 504(b).  Congress thought that persons who
commit serious crimes should not be permitted to hold union office until a healthy
period of time had elapsed after their punishment.  *Harmon v. Teamsters*, 832 F.2d
976, 979 (7th Cir. 1987).  Congress enacted the LMRDA as remedial legislation
intended to combat union corruption and protect the rights of union members. *See,
e.g., Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aero. Workers*, 201 F.3d
517, 518 (4th Cir. 2000). The statute was a reaction to "a number of instances of
breach of trust, corruption, disregard of the rights of individual employees, and other
failures to observe high standards of responsibility and ethical conduct" and was
deemed necessary to protect "the rights and interests of employees and the public
generally as they relate to the activities of labor organizations, employers, labor
relations consultants, and their officers and representatives." 29 U.S.C. § 401(b).
Accordingly, Congress enacted the provisions of the statute to "eliminate or prevent
improper practices on the part of labor organizations, employers, labor relations
consultants, and their officers and representatives." *Id.* at § 401(c).

8.    Sometime prior to April 2003, another union member, Lewis Street, brought a
      complaint to the Department of Labor ("DOL") that Henry was illegally serving as

---

[5] *See Petition of Belpedio*, 753 F. Supp. 239, 240 (N.D. Ill. 1990) (holding that non-workplace
battery falls within the statute).

Branch President in violation of 29 U.S.C. § 504.[6]  Thereafter, the DOL initiated an investigation.  Apparently, Henry and the Union were unaware of 29 U.S.C. § 504 and its prohibition against certain persons holding union offices.  After the completion of its investigation, the DOL informed Henry on August 26, 2003 that he was prohibited from serving as a union officer, and that the prohibition would be in place until 13 years after his conviction (August 2010).  Henry was also advised that he may seek an exemption by filing suit in federal district court.  As stated above, Henry resigned his union office effective September 1, 2003.

9.      Henry desires to again serve as a union steward and eventually Branch President.  Accordingly, he filed this lawsuit seeking an exemption from his prohibition on April 7, 2006.  During an evidentiary hearing on March 22, 2007, Henry testified that he waited until April 2006 to file this suit because earlier "he wasn't ready to say that I have been rehabilitated to the point to I wanted to resume the position of union representative."  Henry testified that he feels that he has now "grown a lot" and he is "aware of what I have done wrong."

10.     The United States District Court for the district in which the disqualifying criminal offense was committed may grant an exemption from the employment disability imposed by section 504 if, pursuant to sentencing guidelines and policy statements under section 994(a) of Title 28, the Court determines that the individual's service would not be contrary to the purposes of the LMRA. 29 U.S.C. § 504(a). Prior to

---

[6]Petitioner notes in his Response that he would still be serving as a union officer if it were not for Mr. Street and his "biased" complaint.  The Court notes that whether or not Mr. Street had an "axe to grind" is irrelevant.

making any such determination the court shall hold a hearing and shall give notice

of such proceeding by certified mail to the Secretary of Labor and to State, County,

and Federal prosecuting officials in the jurisdiction or jurisdictions in which such

person was convicted. *Id.* The court's determination in any such proceeding shall be

final. *Id.*

11.    As stated above, the Court held an evidentiary hearing on March 22, 2007.  Notice

was provided to State, County, and Federal prosecuting officials in the San Antonio,

Texas jurisdiction.

12.    In considering the petition, this Court is directed to follow any applicable sentencing

guideline or policy statement and to determine whether the applicant's holding of a

covered union position "would . . . be contrary to the purposes" of the LMRDA. *Id.*

That purpose is to ensure that labor and management officials "adhere to the highest

standards of responsibility and ethical conduct in administering the affairs of their

organizations." 29 U.S.C. § 401(a); 29 U.S.C. § 401(c) ( "The Congress, therefore,

further finds and declares that the enactment of this chapter is necessary to eliminate

or prevent improper practices on the part of labor organizations, employers, labor

relations consultants, and their officers and representatives which distort and defeat

the policies of the Labor Management Relations Act . . . ."); *Nass v. Local 348,*

*Warehouse Production, Sales and Services Employees Union*, 503 F. Supp. 217, 220

(E.D.N.Y.1980) ("[I]n enacting § 504 Congress sought to eliminate the intolerable

and corrupt conditions which prevailed throughout segments of organized labor

during the 1950's. The legislators therefore provided safeguards which they believed

-6-

would prevent irresponsible and unscrupulous persons from gaining control of union government.") (quoting *Hodgson v. Chain Serv. Restaurant*, 355 F. Supp. 180, 183 (S.D.N.Y.1973), *aff'd*, 657 F.2d 264 (2d Cir.1981). The applicable policy statement in the United States Sentencing Guideline Manual states:

> If the petitioner was convicted of a disqualifying state or local offense . . . relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

U.S.S.G. § 5J1.1; *Petition of Belpedio*, 753 F. Supp. at 241.

13.    In ruling on the exemption determination, the district court should follow the procedures applicable to the resolution of disputed factors at sentencing. *See* U.S.S.G. § 6A1.3; *Carollo v. Herman*, 84 F. Supp.2d 374, 377 (E.D.N.Y. 2000). The petitioner bears the burden of persuasion and must make the kind of evidentiary presentation that he believes will allow him to carry that burden. *Carollo*, 84 F. Supp.2d at 377.  Consequently, Petitioner "has the burden of clearly showing that he is rehabilitated." *Local Union 705 v. U.S. Dept. of Labor*, No. 03 C 5480, 2003 WL 22836375, *2 (N.D. Ill. Nov. 24, 2003).  He may offer live testimony, affidavits, or both. *Carollo*, 84 F. Supp.2d at 377-78.  Union witnesses are competent to testify, but their testimony may deserve less weight than other witnesses. *Id.*

14.    In arguing that he has clearly shown that he is rehabilitated, Henry testified: (1) he has paid the fine imposed on him, (2) he has completed 320 hours of court-imposed community service, (3) he will satisfactorily complete a sexual offender's class (STOP Program) in August 2007, (4) the STOP program has taught him not to be

selfish, accept criticism, overlook the faults of others, and understand that actions have consequences[7], (5) he now understands he raped DP and is remorseful, (6) he has agreed to serve on an advisory board at the STOP program after his probationary period is completed, (7) during his probation he satisfactorily performed as a union steward and Branch President processing grievances on behalf of male and female union employees without incident, (8) union officers appointed him to the steward positions and union members elected him to Branch President knowing of his conviction, (9) he continues to be an active member of the union and informally advises fellow union members, and (10) he has never been disciplined by the USPS. Henry argues that he wants to assume an officer role in the union to improve relationships with management and improve morale. Henry also testified that union service would help serve as a measure of redress for the rape.

15.    In addition to his own testimony, Petitioner proffered the testimony of a number of co-workers and fellow union members[8] who stated that they believed Henry would be a good union officer and that he provided excellent service to the union in the past. In particular, Mr. Moore testified that he believed Henry had made himself a "better person" since his conviction. Mr. Moore also testified that he is not aware of

---

[7]Henry testified that if it wasn't for the STOP, he would "probably be the same person that I was ten years ago . . . . The same selfish, self centered only worried about myself, disrespecting women, thinking of women in only a sexual way."

[8]James E. Moore, Arthur Bunton (by proffer), Terrence Coleman (by proffer), Otis White (by proffer), John Campos (by proffer). In addition, other employees (Bruno Tristan, Alexis Weatherhead, Jesus Ramos, Daniel Garza, Mary Mack, Ana Robinson, Waldo Alonzo, Elroy McIntyre, Robert Collins, and Carlene Clements) were referenced in the briefs.

any complaints being lodged against Henry, that most employees knew of Henry's past conviction, that no women have lodged a complaint about Henry, and that he supports Henry's return as a union officer.  In addition, Mr. Moore testified that if the Union President based in Dallas was opposed to Henry's return, that opposition stems from a personality conflict.

16.     The Department of Labor opposes granting an exemption to Petitioner.  DOL argues: (1) Henry was not initially remorseful regarding the rape; (2) Henry is still on probation, (3) he is registered sex offender for life, (4) Henry's civil rights/voting rights have not been restored, (5) Henry still engages in extramarital sexual relationships[9] and recognizes he still needs to undergo marriage counseling, (6) he was in arrears paying his fine and only paid off the balance a month before the evidentiary hearing in this case, and (7) Henry was untimely on one occasion in making his mortgage payment[10].  Further, DOL argues (and Henry concedes) that his extramarital affairs demonstrate that he has placed his own desires above that of his family and his wife.  Further, DOL argues that allowing Henry to serve as a union officer would place him in circumstances where he would be counseling or advising women in a private setting.

17.     Petitioner's counselor from the STOP program, James Keedy, testified at the hearing

---

[9]Henry testified that for the last four years he has had a relationship with another co-worker and union member.  He further testified that his wife is not yet aware of this affair.  The DOL notes that Petitioner was having this affair during the same time he was enrolled in the STOP sex offender counseling.

[10]Henry testified that his mother suffered medical problems and he financially assisted her causing him to miss one mortgage payment.

that the STOP program believes that a sexual addiction is similar to an alcohol addiction in the sense that a person cannot be rehabilitated, but that a person can manage their addiction. Mr. Keedy further testified that Petitioner will complete the STOP Program in August 2007, that numerous external controls regarding Henry's behavior will cease at that point, and that Henry has expressed some trepidation about the cessation of those controls and the free choices he will face. Mr. Keedy also believes that Henry has had more than one extramarital affair within the last four years and that he is concerned about Henry's secretive behavior. Mr. Keedy opined that Henry should not resume holding any union office stating that it would place Henry in a high risk situation where he would be in an authority position over women and that he should avoid such situations. Mr. Keedy, however, did note that Petitioner had made improvements in his behavior through the STOP program (assuming responsibility, remorseful, less arrogant, more humble).

18.     The DOL called as a witness a USPS labor relations specialist, Janette Barnard. Ms. Barnard testified that union stewards are looked up to by employees, that when an employee has a workplace problem they are often upset and emotional when they visit with the union steward, that stewards and employees meet in a private office that is separate and distinct from management offices, and that USPS management does not have access to that separate union office. Ms. Barnard also testified that union stewards hold a position of trust and must be able to maintain confidential information that employees may share with them. Ms. Barnard testified that she personally did not believe Henry should be able to resume holding a union officer

position because of her concern for female employees.

19.    "If the petitioner was convicted of a disqualifying state or local offense . . . relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.  U.S. Sentencing Guidelines Manual § 5J1.1; *Petition of Belpedio*, 753 F. Supp. at 241; *U.S. v. Glover*, No. 95 CR 40, 2001 WL 1414451, *1 (N.D. Ill. Nov. 13, 2001). Under this standard, the petitioner "has the burden of clearly showing that he is rehabilitated." *Local Union 705,* 2003 WL 22836375, at *2.

20.    This Court is mindful that the LMRDA was enacted to create barriers against corruption in organized labor.  Henry's offense is  not in the same league as offenses typically associated with union impropriety (extortion, bribery, etc.).[11]  Nevertheless, Congress enacted a statute that provides that rape is a disqualifying criminal offense. In addition, the steward position and Branch President position Henry seeks places him in direct, confidential and unobserved contact with union members.  Although Henry performed as a union officer without incident after his conviction, the Court notes that his union service was illegal (although apparently done without knowledge of its illegality).   In addition, although Henry is on the verge of satisfactorily

---

[11]No evidence was brought forth that Henry would endanger the union.  To the contrary, all the evidence points to Henry as a concerned and active union member.  That said, the Court focuses its attention on " the rights of individual employees" and whether Henry can "adhere to the highest standards of responsibility and ethical conduct . . . ."

completing his probation, that does not in and of itself satisfy the burden of clearly showing that he is rehabilitated. *See U.S. v. Cullison*, 422 F. Supp.2d 65, 71 (D. D.C. 2006) (holding that petitioner's completion of probation, earning a doctoral degree, and caring for his disabled son was insufficient to demonstrate rehabilitation).

21.     The Court finds that Henry has been properly barred from serving as a union steward or Branch President pursuant to 29 U.S.C. § 504, and that he has not shown the requisite evidence of rehabilitation to be relieved from the statute's prohibition. Accordingly, Henry's petition is DENIED.[12]

It is so ORDERED.

SIGNED this 4th day of April, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[12]Petitioner argues in his Response that his past union service serves as the most accurate predictor of his future performance as a union representative.  He argues that during his past service he met privately with female union members without incident "and yet, with each interaction, regardless of the sensitivity of the concern or the vulnerability of the grievant, Petitioner acted with an appropriate level of respect and professional demeanor."  Petitioner's counsel has done an admirable job in his representation in this case.  That said, the Court remains concerned that Petitioner continues to use the workplace as a dating opportunity and this clearly mitigates against a finding that Petitioner has met his burden of clearly showing that he is rehabilitated.